USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___3/31/22___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**ELLIOT DABAH,**

**Plaintiff,**

-against-

**NICOLE FRANKLIN ET AL.,**
**Defendants.**

**19-CV-10579 (ALC)**

**OPINION & ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Elliot Dabah brings this action against Defendants Nicole Franklin, Rica Hazelwood, Felix Dumay, Myrtle Green, Sharon Atkins, Sherill Douglas-Alexis, and the City of New York under 42 U.S.C. § 1983 ("Section 1983") and New York state law.[1] The Court now considers Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion to dismiss is **GRANTED**.

## BACKGROUND

The allegations in this suit stem from an investigation by the New York City Administration for Children's Services ("ACS") and related proceedings against Plaintiff in Kings County Family Court. The individual defendants were employed by ACS during the relevant time period. First Amended Complaint ("FAC" or "Complaint") ¶¶ 5–11, ECF No. 44.

Plaintiff has two minor children from a previous marriage, D.D. and I.D., respectively born in 2006 and 2011. Plaintiff's former wife was awarded sole custody of the children with the children residing with Plaintiff every other weekend and on other occasions. *Id*. ¶¶ 3–15; Koroleva Decl. Ex. C, ECF No. 52-3, at 2.

---

[1] Plaintiff served Defendant Rica Hazelwood on November 24, 2020, but Hazelwood has yet to appear in this action. *See* Aff. Serv., ECF No. 49. Nonetheless, Plaintiff's claims against Defendant Hazelwood are dismissed for the reasons discussed within.

On December 16, 2016, ACS informed Plaintiff that ACS received a report accusing Plaintiff of abusing his children. FAC ¶ 30. The report alleged that on December 3, 2016, Plaintiff threatened to push D.D. off the top bunk of her bunkbed and painfully squeezed her arm, leading D.D. to fear Plaintiff and feel unsafe in his presence. *Id*. ¶ 31.

Plaintiff alleges that Defendants' investigation of the allegations again him was "constitutionally and legally inadequate." *Id*. ¶ 46. Namely, although Defendants witnessed D.D.'s affection for her father and although D.D's statements to ACS demonstrated the falsity of the allegations, ACS continued its investigation. *Id*. ¶¶ 48–49. Plaintiff also alleges that Defendants met with Plaintiff's ex-wife who falsely accused Plaintiff of hitting her and the children. *Id*. ¶¶ 52–54. Defendants neither shared with the Plaintiff the nature of the charges against him despite his requests to do so nor did they interview Plaintiff about the charges. *Id*. ¶¶ 5, 57. Defendants also did not interview eyewitnesses, including Plaintiff's wife, and instead relied upon information provided by Plaintiff's ex-wife, her husband, and D.D. and I.D., who were pressured by Plaintiff's ex-wife to make false accusations. *Id.* ¶¶ 60, 62.

On January 5, 2017, Defendants brought child neglect charges against Plaintiff in family court and obtained an *ex parte* order prohibiting Plaintiff from contacting his children, only allowing Plaintiff limited interaction with his children under Defendants' supervision. *Id.* ¶¶ 67, 72–73. Defendants impeded Plaintiff from obtaining a prompt post-deprivation hearing. *Id.* ¶¶ 76–78. The family court proceeding continued for 20 months. *Id.* ¶ 93. Plaintiff alleges that Defendants presented false evidence at trial, and more generally, Defendants' actions were largely driven by demands made by Plaintiff's ex-wife. *Id.* ¶¶ 63, 96–98. The family court ultimately dismissed all charges. *Id.* ¶ 100.

On November 15, 2018, Plaintiff served a Notice of Claim. *Id*. ¶ 12. Plaintiff initiated the present action on November 15, 2019. ECF No. 2. Defendants filed a motion to dismiss the complaint on October 19, 2020. ECF No. 41. On November 8, 2021, Plaintiff filed an amended complaint. ECF No. 44. Defendants filed the instant motion to dismiss on February 1, 2021, Plaintiff filed his brief in opposition on February 20, 2021, and Defendants filed their reply on March 5, 2021. ECF Nos. 50, 53,57.

## STANDARD OF REVIEW

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011). The Court may also "take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court

records of prior litigation and that relate to the case *sub judice*," *Ferrari v. Cnty. of Suffolk*, 790 F.Supp.2d 34, 38 n.4 (E.D.N.Y. 2011), as well as documents submitted by defendants if "(1) plaintiffs have undisputed notice of the contents of such documents; and (2) such documents are integral to the plaintiffs' claim," *R.H. Damon & Co. v. Softkey Software Prod.*, *Inc.*, 811 F. Supp. 986, 989 (S.D.N.Y. 1993).

Here, Defendants submitted with their motion the child neglect petitions and dismissal order entered in the state neglect proceedings. *See* Koroleva Decl. Exs. A–C, ECF Nos. 52-1–52-3. The Court may take judicial notice of court records of the family court proceeding. *See In re Dayton*, 786 F. Supp. 2d 809, 814 (S.D.N.Y. 2011) (taking judicial notice of documents from family court proceedings submitted by the defendants); *Licorish-Davis v. Mitchell*, No. 12-cv-601(ER), 2013 WL 2217491, at *1 n.2 (S.D.N.Y. May 20, 2013) (taking notice of filings in the underlying family court action because it "clearly relates to the present action," "Plaintiffs, as parties to the Family Court matter, have notice of the contents of the [relevant order]," and the "[o]rder is integral to Plaintiffs' claims"); *Lomnicki v. Cardinal McCloskey Servs.*, No. 04–cv–4548(KMK), 2007 WL 2176059, at *1 n.1 (S.D.N.Y. July 26, 2007) (holding that a court may take judicial notice of family court orders).

While I may take judicial notice of the family court documents "to establish the fact of such litigation and related filings," I may not "take judicial notice of a document filed in another court . . . for the truth of the matters asserted in the other litigation." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citations omitted). However, I may separately consider documents incorporated in the complaint by reference, including documents not explicitly incorporated by reference that are "nevertheless 'integral' to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Generally,

under this exception, "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157. Here, the family court documents are integral to the claims—in addition to their explicit references in the Complaint, the petitions initiated the family court proceedings which form the basis of Plaintiff's allegations and the dismissal order terminated those proceedings. *See Licorish-Davis*, 2013 WL 2217491, at *1 n. 3.

Thus, I consider the petitions and dismissal order alongside my review of the Complaint; however, I am still required to accept the Complaint's allegations as true. *R.H. Damon & Co. v. Softkey Software Prod., Inc.*, 811 F. Supp. 986, 989 (S.D.N.Y. 1993).

## DISCUSSION

While Plaintiff's precise claims are not clearly delineated in the Complaint, Plaintiff appears to assert the following six claims: (1) under the First Cause of Action, violations of Plaintiff's liberty interest in the "custody, control, and management of his children," "his right of intimate association," and violations of procedural due process under the First and Fourteenth Amendments to the United States Constitution; (2) under the Second Cause of Action, municipal liability against the City of New York for improper training and supervision of City of New York employees; (3) under the Third Cause of Action, abuse of process and malicious prosecution in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (4) under the Fourth Cause of Action, abuse of process and malicious prosecution in violation of New York law; (5) under the Fifth Cause of Action, interference with custody in violation of New York law; and (6) under the Sixth Cause of Action, negligence.

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). A complaint under § 1983 "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

The parties do not dispute that Defendants acted under color of state law. However, the Court finds that Plaintiff has failed to state a claim for violations of his constitutional rights. As Plaintiff has failed to assert such violations, the Court does not reach the claim of municipal liability or the defense of qualified immunity.

### I.        Substantive Due Process

Plaintiff alleges violations of his liberty interest in the custody of his children and his right to intimate association. As a preliminary matter, Plaintiff alleges violations of his right to intimate association pursuant to the First Amendment. Here, this claim is more appropriately analyzed under the Fourteenth Amendment rather than the First Amendment. The right to intimate association "guarantees an individual the choice of entering into an intimate relationship free from undue intrusion by the state." *Sanitation & Recycling Indus. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997). This right applies to relationships that "attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children and cohabitation with one's relatives." *Id*. (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984)). The freedom of intimate association is "constitutionally protected as a fundamental element of personal liberty." *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (quoting *Roberts*, 468 U.S. at 618).

"[C]ourts within this Circuit specifically addressing the right to intimate association vis-a-vis parent-child relationships have analyzed the right under the principles of substantive due process rather than the First Amendment." *Uwadiegwu v. Dep't of Soc. Servs. of the Cnty. of Suffolk*, 91 F. Supp. 3d 391, 398  (E.D.N.Y. 2015) (quoting *Licorish–Davis*, 2013 WL 2217491, at \*6), *aff'd*, 639 F. App'x 13 (2d Cir. 2016); *see also Agostino v. Simpson*, No. 08–cv–5760(CS), 2008 WL 4906140, at \*9 (S.D.N.Y. Nov. 17, 2008)("Where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member and asserts a claim based on intimate association, the courts in this Circuit have considered the claim as deriving from the First Amendment.").  Accordingly, I analyze the intimate association claim under the substantive due process legal framework.

Parents have "a constitutionally protected liberty interest in the care, custody and management of their children." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2011) (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999)). This substantive due process right of custody is "counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Id*. at 152 (quoting *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999)). Therefore, to state a claim for a violation of this liberty interest, "a plaintiff must demonstrate that the state action depriving him of custody was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Tenenbaum*, 193 F.3d at 600).

Plaintiff has alleged that pursuant to the divorce decree, the children resided with him for set periods during which Plaintiff had custody, control, and management of the children. FAC ¶¶

14, 19. Plaintiff alleges that Defendants' actions resulted in the loss of this time with his children. The dismissal order states that the divorce decree awarded Plaintiff's ex-wife with "sole legal and physical custody," and Plaintiff "had access" to the children during the set periods described in the Complaint. Koroleva Decl. Ex. C, ECF No. 52-3, at 2. While alleging a loss of "custody," neither the Complaint nor Plaintiff's opposition brief disputes that Plaintiff's ex-wife retained primary custody of the children.

Regardless of whether Plaintiff's access to his children was labeled "custody" in legal papers, it is clear from his allegations that his parenting time was greatly diminished as a result of Defendants' actions. While it is true that generally "[w]here there is no actual loss of custody, no substantive due process claim can lie," *Cox*, 654 F. 3d at 276, "due process protection extends to a non-custodial, biological parent" when the parent demonstrates "a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of [the] child." *United States v. Donohue*, 726 F. App'x 3, 6 (2d Cir. 2018) (quoting *Lehr v. Robertson*, 463 U.S. 248, 261 (1983)). At this stage, Plaintiff has alleged sufficient facts such that these due process protections apply.

However, Plaintiff's claim fails on the second prong of the substantive due process inquiry as Plaintiff has failed to allege that Defendants' conduct was "shocking, arbitrary, and egregious." "This Circuit has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context. An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse." *Wilkinson*, 182 F.3d at 104 (quoting *van Emrik v. Chemung Cnty. Dep't of Soc. Servs.*, 911 F.2d 863, 866 (2d Cir. 1990)).

The allegations in the Complaint state that Defendants received reports of abuse carried out by Plaintiff, including an incident that occurred just 13 days earlier in Plaintiff's home. The Complaint also states that Defendants are required by law to report and investigate suspected child abuse or maltreatment. These allegations provide a reasonable basis for Defendants' investigation and charges, and certainly do not constitute "shocking, arbitrary, and egregious" conduct. Further, "[t]he Family Court is the entity responsible for denying Plaintiff custody of his children, not Defendants" and "[i]f Plaintiff takes issue with the decisions of the Family Court, he is free to challenge those in the appropriate forum—the Family Court." *Uwadiegwu*, 91 F. Supp. 3d at 399. Thus, Plaintiff's substantive due process and right to intimate association claims fail.

## II.     Procedural Due Process

Under principles of procedural due process, judicial process must generally be afforded "before removal of the child from his or her parent's custody may be effected." *Southerland*, 680 F.3d at 142. "[T]here is no authority for the proposition that . . . a non-custodial parent ha[s] a clearly established right to a pre-termination hearing before suspension of whatever visitation rights she might have." *Uwadiegwu v. Dep't of Soc. Servs. of the Cnty. of Suffolk*, 639 F. App'x 13, 15 (2d Cir. 2016) (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir.1998)). Thus, there is no requirement that Plaintiff be afforded notice and a hearing before Defendants' interference with his access to his children.

Assuming arguendo that Plaintiff's deprivation of his access to his children suffices as a protected liberty interest, Plaintiff's procedural due process claims still fail. In order to state a procedural due process claim, "plaintiffs must allege that the children were removed without parental permission and without Court authorization." *Hollenbeck v. Boivert*, 330 F. Supp. 2d 324, 332 (S.D.N.Y. 2004). Here, Plaintiff alleges that the judicial process *was* employed as Defendants

9

obtained a court order before removing Plaintiff's access to his children. FAC ¶ 72. It is inapposite

that the initial court order was *ex parte*. *Tenenbaum v. Williams*, 193 F.3d 581, 594 (2d Cir. 1999)

(stating that "prior judicial authorization, *ex parte* or otherwise, for the child's removal" is required

unless the circumstances are emergent). It is true that "parents must be provided with a prompt

post-deprivation hearing" in emergency removal cases. *Hollenbeck*, 330 F. Supp. 2d at 332

(quoting *Tenenbaum*, 193 F.3d at 594). However, as previously discussed, Defendants obtained a

court order before limiting Plaintiff's access to his children. Plaintiff's case did not proceed as an

emergency removal case.

To the extent that Defendant argues he was deprived procedural due process after his

access to his children was limited, the Court finds that Plaintiff has failed to sufficiently allege

Defendants denied Plaintiff a post-deprivation opportunity to be heard. Plaintiff "appear[ed] in the

Family Court on more than 20 occasions" and "repeatedly sought to invoke his right to a post-

deprivation hearing in the Family Court." FAC ¶¶ 77, 95. It is clear that Plaintiff was an "active

participant[] in the state court proceeding," and therefore was "afforded the opportunity to be

heard." *Adams v. Louis*, No. 15-CV-2575(AMD)(RLM), 2016 WL 816789, at *2 (E.D.N.Y. Feb.

29, 2016). Additionally, the family court, not Defendants, is the entity responsible for Plaintiff's

allegations regarding the post-deprivation hearing. Plaintiff alleges that "Plaintiff repeatedly

sought to invoke his right to a post-deprivation hearing in the Family Court" and Defendants

"objected to plaintiff's requests and barred plaintiff from obtaining a prompt post-deprivation

hearing by advancing meritless arguments in the Family Court proceeding." FAC ¶ 77. Per

Plaintiff's allegations, the family court proceedings *did* cover issue of a post-deprivation hearing.

*See Adams*, 2016 WL 816789, at *2 ("The plaintiffs themselves agree that there have been

proceedings in Family Court on this very subject; their quarrel seems to be with the outcome of the proceedings, not whether there actually were proceedings.").

Accordingly, Plaintiff fails to state a claim for violations of his procedural due process rights.

### III.     Malicious Prosecution

To succeed on a malicious prosecution claim, "a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). While Section 1983 malicious prosecution claims may arise from a civil proceeding, a federal malicious prosecution claim is more limited than the New York tort of civil malicious prosecution because "a claim for malicious prosecution under § 1983 may only arise where there has been a violation of the plaintiff's Fourth Amendment rights." *Graham v. City of New York*, 869 F. Supp. 2d 337, 356 (E.D.N.Y. 2012). Additionally, "the law in our Circuit is unsettled as to whether child removal proceedings can give rise to a federal claim for malicious prosecution of a parent." *Walker v. City of New York*, 621 F. App'x 74, 76 (2d Cir. 2015).

A civil malicious prosecution cause of action can only survive if there is "a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995) ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'"). Plaintiff has failed to allege a qualifying act of seizure. Plaintiff claims that he was seized because "he was restrained from associating with his children for nearly 20 months." Pl.'s Mem. Opp'n Defs.' Mot. ("Pl.'s

Mem.")19, ECF No. 53. However, parents have no such Fourth Amendment right. "A Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf." *Southerland*, 680 F.3d at 143. Plaintiff does not bring a Fourth Amendment claim or any other claim on behalf of his children.

As Plaintiff's Fourth Amendment rights were not violated, Plaintiff fails to state a claim for malicious prosecution.

### IV. Abuse of Process

An abuse of process claim brought under Section 1983 is analyzed under the elements of the New York abuse of process tort, requiring that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). "In order to state a [§ 1983] claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action . . . [and] that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (quoting *Savino v. City of New York,* 331 F.3d 63, 77 (2d Cir. 2003)). Therefore, an abuse of process cause of action requires an ulterior purpose such as "infliction of economic harm, extortion, blackmail and retribution." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010).

Plaintiff does not put forth the requisite specific allegations to support his abuse of process claim. He does not allege that Defendants acted "with intent to do harm without excuse or justification" nor does he allege a sufficient improper purpose. Plaintiff argues that "abuse of process is asserted by way of the conspiracy of all Defendants working together with Plaintiff's

ex-wife." Pl.'s Mem. at 20. This vague assertion does not satisfy the elements of an abuse of process claim. Thus, Plaintiff fails to state a claim for abuse of process.

## V.        Municipal Liability and State Law Claims

As Plaintiff has failed to allege any constitutional claim, I need not reach the issue of municipal liability. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (dismissing claim against municipality under Section 1983 for the unconstitutional actions of its employees because claimant "cannot show that his constitutional rights were violated").

I decline to exercise jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction"). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

As the Court has dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims and dismisses these claims without prejudice.

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' motion to dismiss. Accordingly, the Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 50 and close the case.

**SO ORDERED.**
**Dated:** **March 31, 2022**
        **New York, New York**

_____

                                ANDREW L. CARTER, JR.
                                United States District Judge

14